```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
EDZER METELLUS,
                              Plaintiff,                **MEMORANDUM & ORDER**
                                                        **NOT FOR PUBLICATION**
         - against -
                                                        07 CV 4719 (CBA) (RER)
JETBLUE AIRWAYS CORPORATION,
THE PORT AUTHORITY OF NEW YORK,
THE PORT AUTHORITY POLICE DEPARTMENT
AT JFK INTERNATIONAL AIRPORT

                              Defendants.
-----------------------------------------------------------------X
AMON, United States District Judge:
```

Plaintiff Edzer Metellus ("plaintiff" or "Metellus") filed this action in New York Supreme Court against JetBlue Airways Corporation ("JetBlue"), the Port Authority of New York (the "Port Authority"), and the Port Authority Police Department (the "Port Authority Police") at John F. Kennedy International Airport ("JFK") in April 2007, alleging various claims arising from JetBlue's termination of plaintiff's employment. The Complaint was not mailed to JetBlue until October 24, 2007. JetBlue removed the case to this Court under 28 U.S.C. §§ 1331 and 1441. On November 20, 2008, the Court granted JetBlue's motion to dismiss plaintiff's original complaint with leave for plaintiff to file an amended complaint. After seeking an extension, plaintiff filed an Amended Complaint on December 26, 2008.

In the Amended Complaint, plaintiff asserts five causes of action against JetBlue: 1) wrongful termination in breach of JetBlue's alleged contractual obligations to plaintiff; 2) intentional infliction of emotional distress (the "emotional distress claim") as a result of his

1

wrongful termination; 3) wrongful termination in retaliation for his failure to cooperate in a JetBlue investigation; 4) violation of his rights under the Fourth and Fourteenth Amendments of the U.S. Constitution; and 5) defamation.

JetBlue moved to dismiss the Amended Complaint in lieu of filing an answer. Plaintiff's counsel never responded to JetBlue's repeated requests to establish a briefing schedule. On January 14, 2009, JetBlue submitted a letter to the Court detailing its efforts to contact plaintiff's counsel and submitted a proposed briefing schedule which the Court approved. JetBlue served its motion to dismiss the Amended Complaint on Metellus on February 6, 2009. Plaintiff neither served an opposition to the motion nor sought JetBlue's consent for an extension. In light of Plaintiff's failure to respond to the motion to dismiss, JetBlue moved this Court for a judgment "by default" pursuant to Local Civil Rule 7.1(a), or, alternatively, for dismissal for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

**I.     Local Civil Rule 7.1(a)**

Local Civil Rule 7.1(a) provides that "all motions and all oppositions thereto shall be supported by a memorandum of law . . . : [and] [w]illful failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default." See, e.g., Vargas v. Boston Chicken Co., 269 F. Supp.2d 92, 98 (E.D.N.Y. 2003) (granting plaintiff's motion to dismiss defendant's cross claims for its failure to submit opposition papers). It is well settled that the "[f]ailure to file a memorandum of law in opposition to the opposing party's motion is, by itself, a sufficient basis to grant the motion." Employers Ins. Co. of Wausau v. Skinner, No. CV-07-735 (JS)(AKT), 2008 WL 4283346 at *4 (E.D.N.Y. Sept. 17, 2008) (quoting Kamara v. United States, No. 04 Civ. 626 (THK), 2005 WL 2298176 at *1

(S.D.N.Y. Sept. 20, 2005)). In this case, JetBlue submitted evidence of its repeated and fruitless attempts to contact Metellus through counsel, and Metellus appears to have remained silent since filing the Amended Complaint in December 2008. Accordingly, the Court finds that this motion should properly be granted "by default" pursuant to Local Rule 7.1(a). In its discretion, however, the Court may evaluate Plaintiff's claims on the merits. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."). As discussed below, even if Local Rule 7.1(a) did not support JetBlue, Plaintiff's claims fail, alternatively, on the merits.

**II. Facts**

Plaintiff was employed by JetBlue as a "supervisor", and worked for JetBlue for approximately six years. (Am. Compl. ¶ 7). On March 22, 2006, plaintiff was on duty as a supervisor for Gates 1-4. (Id. ¶ 9). As part of his duties as a supervisor, plaintiff alleges it was his responsibility to "transport and secure all baggage from incoming flights at his assigned location, as well as oversee package pick up, and the securing of any and all packages" when scheduled pick-ups failed to occur. (Id. ¶ 8). Shortly before his lunch break that day, he placed a package first in a luggage cart, and then in a JetBlue van which he drove out of the airport. (Id. ¶¶ 10-12). Plaintiff alleges that he did so because a driver refused to pick up the package, and he intended to mail the package on his way back from lunch. (Id.). While driving, plaintiff claims he was cut off by two cars seeking to block his travel. (Id. ¶ 13). When he stopped, he alleges that he was approached by four plainclothes postal inspectors, who did not identify themselves. (Id. ¶ 14).

Thereafter, plaintiff alleges that he was brought to the post office in handcuffs and

interrogated without being informed he was under arrest or what the charges were against him, and that he did not receive his "Miranda" rights. (Id. at ¶ 16). He claims they told him that people were stealing from JetBlue and that they wanted him to give them the names of the people involved (Id. ¶ 17). He asserts that at least five postal inspectors interrogated him for approximately three hours, and eventually placed him under arrest. (Id. ¶ 18). He also alleges two JetBlue security officers were present during the interrogation, and that they spoke to him at his holding cell. (Id. ¶ 19). Later that night, he alleges he was picked up by Port Authority Police and taken to the Port Authority Police Precinct at JFK. (Id. ¶ 20). He claims that he was interrogated there once again, threatened with deportation, and that an FBI agent briefly entered the room. (Id. ¶¶ 21-23). Later that night, he was allegedly transferred to central booking. (Id. ¶ 25) He claims he only learned of the charges against him when he was arraigned the following day: felony grand larceny in the third degree and criminal possession of stolen property in the third degree. (Id. ¶ 28).

On April 19, 2006, plaintiff states that he was terminated by JetBlue "for what they alleged to be an incident regarding the unauthorized removal of property from JFK Airport." (Id. ¶ 32). He alleges that he was fired for actions that were "part of his . . . regular routine" as a supervisor, namely, taking the container off the premises in a JetBlue van. (Id. ¶ 33). He further alleges that, at the time of his termination, JetBlue had a "progressive disciplinary policy" in effect, known as the Progressive Guidance System, under which employees were to undergo a four step disciplinary system of varying degrees of verbal and written warnings prior to termination. (Id. ¶ 34). Plaintiff claims he was never subject to any disciplinary measures, that his work performance "had always been very good", and that it was common practice for

employees to receive warnings or discipline under the Progressive Guidance System. (Id. ¶¶ 35-36). Plaintiff also alleges that JetBlue supervisors made defamatory statements about him to other employees, calling him "a thief and a liar" and stating that he was fired for stealing from JetBlue. (Id. ¶ 38).

## II. Discussion

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed "for failure of the pleading to state a claim upon which relief can be granted." On such a motion, the court assumes the truth of all the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. See Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 154 (2d Cir. 2006).

In order to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (extending the rule established in Bell Atlantic v. Twombly to "all civil actions") ; Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, if a plaintiff does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly.; see also Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (2009). To state a plausible claim for relief, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. When determining the sufficiency of a complaint for Rule 12(b)(6) purposes, "consideration is limited to the factual allegations in plaintiffs' [ ] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing

5

suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citations omitted); see also I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir.1991) (holding that district courts may consider documents submitted by a defendant on a motion to dismiss if the documents are explicitly relied upon in and integral to the plaintiff's complaint). Accordingly, because plaintiff asserts claims directly related to the employment policies described in the JetBlue Blue Book, the Court may consider that document on this motion.

**A. Breach of Contract**

Metellus argues that that JetBlue "breached its contractual obligations to [him] in violation of the Progressive Guidance System" in the JetBlue Blue Book. (Am. Compl. ¶ 44). However, Metellus ignores the explicit language of the Blue Book, which states that the policy is "not intended to, and does not, create a term of employment or any employment contract, promise or representation, express or implied, with JetBlue" and further states that it "does not limit or restrict JetBlue in creating or terminating employment relationships." (Cerasia Decl., Ex. A at JB0004). Further, contrary to Metellus' claim that a Jet Blue employee cannot be terminated without undergoing the four step warning process of the Progressive Guidance System, the Blue Book explicitly states that "[p]rogressive guidance can be accelerated and involuntary termination can occur at any time, without any previous progressive guidance having been taken under these guidelines." (Cerasia Decl., Ex. A at JB0014). The Blue Book also specifies that the "performance improvement guidelines do not alter the at-will employment relationship between JetBlue and its Crewmembers" and again reiterates that they can "be accelerated at any time based on the specific incident/circumstance." (Id., at JB0015).

Under New York law, "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party. De Petris v. Union Settlement Ass'n, Inc., 86 N.Y.2d 406, 410 (1995) (quoting Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 333 (1987). Although an employee's detrimental reliance in accepting employment on an express written policy limiting the right of an employer to terminate employees could give rise to a breach of contract claim, see Weiner v. McGraw-Hill Inc., 57 N.Y.2d 458, 465-66 (1982), Metellus does not raise any such allegations. He appears to contend only that he was not an at-will employee because the Progressive Guidance System limits JetBlue's ability to terminate employees. Because, however, the New York Court of Appeals has determined that "the mere existence of a written policy . . . does not limit an employer's right to discharge an at will employee or give rise to a legally enforceable claim by the employee against the employer," Metellus' breach of contract claim cannot succeed. De Petris, 86 N.Y.2d at 410.

**B. Intentional Infliction of Emotional Distress**

In his Second Cause of Action, Metellus asserts a claim for intentional inflection of emotional distress. He alleges that JetBlue, "[b]y intentionally failing to abide by its own policies and practice" when it terminated his employment, "caused plaintiff to suffer loss of professional status, denial of experience, humiliation, emotional pain and suffering and severe mental distress". (Am. Compl. ¶ 49). These allegations do not give rise to a viable IIED claim.

In order to establish an emotional distress claim under New York law, Metellus must prove "extreme and outrageous conduct which so transcends the bounds of decency as to be

regarded as atrocious and intolerable in a civilized society." Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143-44 (1985). The standard for extreme and outrageous conduct is not easy to satisfy, and liability will only be found "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Murphy v. Am. Home Products Corp., 58 N.Y.2d 292, 303 (1983). None of the facts alleged in the complaint approach this standard. Accordingly, the emotional distress claim is dismissed.

### C. Wrongful Retaliatory Discharge

Metellus' Third Cause of Action alleges that his termination was "an impermissible retaliatory action. . . for plaintiff's failure to cooperate and/or participate in a joint undercover investigation with defendant JetBlue and postal inspectors and Port Authority police to discover the identity of person or persons allegedly stealing from JetBlue." (Am. Compl. ¶ 52). New York courts have repeatedly refused to recognize a cause of action for abusive or retaliatory discharge. See Horn v. N.Y. Times, 100 N.Y.2d 85, 96 (2003) ("We have consistently declined to create a common-law tort of wrongful or abusive discharge . . . and we again decline to do so."); Lobosco v. N.Y. Tel. Co./NYNEX, 96 N.Y.2d 312, 316 (2001); Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 335-36 (1987); Murphy v. Am. Home Prods., 58 N.Y.2d 293, 302 (1983) ("Recognition in New York State of tort liability for what has become known as abusive or wrongful discharge should await legislative action."). As the Court of Appeals observed, recognition of such a cause of action "would alter the long-settled rule that where an employment is for an indefinite term it is presumed to be a hiring at will which may be freely

terminated by either party at any time for any reason or even for no reason." Murphy, 58 N.Y.2d at 300. Because the well-settled law of New York does not recognize a claim for wrongful termination, the Third Cause of Action is dismissed.

### D. Fourth and Fourteenth Amendment Claims Against JetBlue

In his Fourth Cause of Action, Metellus alleges that he was "deprived of his right to be free from punishment and of due process of law as guaranteed by the 14th Amendment to the United States Constitution" as a result of JetBlue's "collective unlawful, deliberate, malicious and illegal actions". (Am. Compl. ¶ 60). He further alleges that JetBlue, the postal inspectors and the Port Authority Police violated his rights "under the Fourth and Fourteenth" Amendments. (Id. ¶ 61). Metellus' claim fails, however, because no Fourth or Fourteenth Amendment claim may be brought against JetBlue, a private actor. The Fourteenth Amendment does not protect against private conduct, "no matter how unfair that conduct may be." Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 192 (1988). "As a general matter the protections of the Fourteenth Amendment do not extend to 'private conduct abridging individual rights.'" Id. (quoting Burton v. Wilmington Parking Authority, 365 U.S. 715, 722 (1961)).

JetBlue, a private corporation, can only be held liable for constitutional violations if can be deemed to be a "state actor". The Supreme Court has established three tests to determine whether a private employer constitutes a state actor: "(1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test." Mitchell v. Home, 377 F. Supp.2d 361, 370 (S.D.N.Y. 2005) (citing Rendell Baker v. Kohn, 457 U.S. 830, 842 (1982); Adickes v. S.H. Kress & Co., 398 U.S. 144, 170 (1970); Burton, 365 U.S. at 725). Under the

public function test, Metellus must establish that JetBlue's function as an airline is "traditionally the exclusive prerogative of the State." Rendell Baker, 457 U.S. at 842 (emphasis in original). Metellus has not made any such allegation, nor could he, and JetBlue cannot be found a state actor under the public function test. Neither has Metellus alleged any facts relevant to the state compulsion test, which requires a plaintiff to show that the state exercised coercive power over the private party (i.e., JetBlue). For a finding of state action under the state compulsion test, "plaintiff must show that the state actor exercised coercive power or . . . provides such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Mitchell, 377 F. Supp.2d at 370. For example, where the owner of a company, in the presence of a police officer, enforces a law requiring segregation in a dining facility, there will still be state action in violation of the Fourteenth Amendment. See Adickes, 398 U.S. 144 (1970). Plaintiff does not allege that JetBlue was compelled by law or other coercive power or significant encouragement of the state to engage in any action giving rise to a constitutional violation. In fact, plaintiff's theory appears to be the precise opposite: that the postal inspectors and detectives were engaging in an investigation on behalf of JetBlue. Accordingly, Metellus cannot establish state action against JetBlue under the state compulsion theory.

Under the symbiotic relationship test, "plaintiff must show that the state has so far insinuated itself into a position of interdependence . . . that it must be recognized as a joint participant in the challenged activity." Mitchell, 377 F. Supp.2d at 370. "The prototypical symbiotic relationship case occurs when the government has a proprietary interest in the private entity." Scheiner v. Wallace, 860 F. Supp. 991, 999 (S.D.N.Y. 1994). In Hadges v. Yonkers

10

Racing Corp., 918 F.2d 1079, 1081 (2d Cir. 1990), the court found insufficient interdependence between the government and a racetrack, despite the fact that government heavily regulated the track derived substantial tax revenues from it. In so doing, the court noted that the State lacked a sufficiently direct financial stake in the enterprise and had no proprietary interest in the racetrack. Id.

Similarly, in Moor-Jankowski v. Board of Trustees of New York Univ., No. 96-CV-5997, 1998 WL 474084 (S.D.N.Y. Aug. 10, 1998) at *13, the court noted that many cases that have found a symbiotic relationship contained facts demonstrating a significant entanglement of public and private enterprise, such as where the federal government owned the land on which the private actor had its factory, and the majority of the contractors' work was for the government; or where a volunteer fire department performed a state function and occupied land owned by the town.

In this case, Metellus has not alleged any interdependence between the government and JetBlue beyond, potentially, cooperation in the investigation of a crime. Nor has Metellus alleged that the post office or detectives or the entities they represent have either a financial stake or proprietary interest in JetBlue. Plaintiff merely claims that "during his interrogation" by the postal inspectors, "two JetBlue security officers were present" and "they also spoke to him at the holding cell at the post office." (Am. Compl. ¶ 19). He does not allege any involvement by the JetBlue security officers other than that they were "present" and does not make any allegations as to what they discussed with him. The bare fact that JetBlue officers may have been present is not a sufficient basis from which to extrapolate an interdependent relationship.

Plaintiff also raises a number of other conclusory allegations about Jet Blue's

11

involvement with the authorities. He states that "[u]pon information and belief, at the time of plaintiff's termination there was a sting operation being conducted by JetBlue and the JFK postal inspectors, and as a result, plaintiff was terminated for taking steps . . . that has [sic] been part of his and other supervisors [sic] regular routine, from the inception of his employment." (Am. Compl. ¶ 33). He also alleges that "JetBlue in conjunction with postal inspectors and Port authority [sic] police intentionally subjected plaintiff to arrest and detention for the sole purpose of coercing plaintiff into a position where he would agree to work undercover for and with them to discover the identity of person or persons who they all alleged were stealing from defendant JetBlue." (Am. Compl. ¶ 58). The allegations do not plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Iqbal, 129 S.Ct. at 1950. Plaintiff alleges no facts beyond conclusory statements that there was some kind of "sting operation" and that the authorities were trying to "coerce" him to "work undercover". The bare allegation that JetBlue cooperated with a police investigation does not render the company a state actor. See, e.g., Middleton v. City of New York, No. 04-CV-1304(JFB)(LB), 2006 WL 1720400 at *8 (E.D.N.Y. Jun. 19, 2006) (collecting cases). Accordingly, plaintiff's Fourth and Fourteenth Amendment claims must be dismissed.

### E. Defamation

Plaintiff alleges that, in August 2007, supervisors at JetBlue Airways "communicated to [his] co-worker's and other employees at the job the following false and defamatory words[:] 'Metellus was fired for stealing from JetBlue. Metellus is a thief and a liar.'" (Am. Compl. ¶ 65). Although a plaintiff need not plead a defamation claim in considerable detail, Rule 8(a) of

the Federal Rules of Civil Procedure requires a concise statement of the basis of his claim. See Ahmed v. Gelfand, 160 F. Supp.2d 408, 416 (E.D.N.Y. 2001). A plaintiff need not plead a defamatory statement in haec verba, but the pleadings must be sufficient to "afford the defendant sufficient notice of the communications complained of to enable him to defend himself." Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986) (citing Liguori v. Alexander, 495 F. Supp. 641, 647 (S.D.N.Y. 1980)). Ordinarily, this requires a plaintiff pleading defamation claims to state "the substance of the purported communication, who made the communication, when it was made, and to whom it was communicated." Ahmed, 160 F. Supp.2d at 416; see also Broome v. Biondi, No. 96 CIV. 0805 RLC, 1997 WL 83295 (S.D.N.Y. Feb. 10, 1997) ("The liberal pleading standard for defamation is satisfied by an adequate identification of the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated."). Plaintiff's complaint states only that "supervisors at JetBlue Airways Corporation" communicated the allegedly defamatory statements to "co-workers and other employees," without identifying the person who made it or to whom, specifically, it was communicated. Absent such identifying information, the Court must dismiss these claims. See Ahmed, 160 F. Supp.2d at 416 (dismissing defamation claims where plaintiff failed to identify "which [d]efendant made the supposedly defamatory statements, when the statements were made, or to which 'other employees' the statements were communicated").

### IV.     Conclusion

For the reasons described above, JetBlue's motion to dismiss the Amended Complaint is granted on all claims. The Court also takes notice that the Port Authority and Port Authority

Police defendants remain parties to this action. In light of Metellus' failure to file a response to JetBlue's motion to dismiss or otherwise contact the Court since filing the Amended Complaint in December 2008, Metellus is directed within thirty days of this order to show cause why the Court should not dismiss this action for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Failure to comply with this Order will result in dismissal of the remaining claims.

The Clerk of the Court is directed to enter judgment in accordance with Order.

SO ORDERED.

Dated: Brooklyn, New York
March 29, 2009

/s/ Carol Bagley Amon
_____
Carol Bagley Amon
United States District Judge